**URCIOLO et al. v. O'CONNOR.**

No. 8878.

United States Court of Appeals
District of Columbia.

Argued March 22, 1945.

Decided May 14, 1945.

Mr. Charles H. Houston, of Washington, D. C., for appellants.

Mr. Francis J. Kelly, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

The complaint charges that the defendant Urciolo, a real estate broker, while purporting to act as agent for the plaintiff in selling her real estate, secretly purchased on his own account and resold the property at a profit. Plaintiff seeks to recover that profit alleged to have been made in violation of the fiduciary relationship of real estate broker and client which was alleged to have existed between plaintiff and defendant. The jury brought in a verdict for the plaintiff for the profits made on the re-sale. The principal ground of this appeal is that the record contains no evidence that a relationship of real estate broker and client was ever established between the parties.

The testimony is conflicting but, for the purpose of this appeal, we must resolve all doubts in favor of the plaintiff. In this view we find the record discloses the following facts: Plaintiff had appointed her son, Louis O'Connor, to dispose of the property involved in this case. Louis O'Connor listed the property with several real estate brokers. One of them, Tabler, contacted a broker named Fisher who finally negotiated the sale. Fisher was the only person who saw or knew defendant Urciolo or who had any direct dealings with him in connection with the sale. Fisher testified that he brought the property to Urciolo's attention. He said Urciolo did not appear to have any previous knowledge of it at that time. After Fisher had showed the property to Urciolo, Urciolo made an offer of $14,000. Fisher reported that offer to Louis O'Connor who refused it. Urciolo then offered $14,500 which was accepted. According to Fisher's testimony, at no time did Urciolo purport to act as the agent of the plaintiff. He made the offers on his own behalf and paid for the property with his own check. Nor did the plaintiff or Louis O'Connor at any time treat Urciolo as an agent. They paid him no commission and it never occurred to them to offer him one.

Title to the property was taken in the name of Ethel Owensby who was a fictitious grantee, holding in trust for Urciolo, or, in the parlance of the trade, a "straw". Fisher testified that he had an idea she was a straw but had no reason to inquire into the matter. He testified that it was the usual custom of real estate brokers purchasing property on their own account to take title in the name of someone else.

The only testimony which even purports to show that the defendant Urciolo was engaged as plaintiff's agent relates to a telephone call by Louis O'Connor in response to a message left at his office asking that he call Urciolo's. O'Connor's version of this telephone call reads as follows:

"When I came out of there [out of the hospital where he had been for seventen days], Mr. Owen said Mr. Urciolo had called me and gave me this phone number, and I called the number and when I got it

a party answered, and I said: Is this the Urciolo Realty Company?

"And they said, yes, and I said: This is Mr. O'Connor. Someone called me, and I want to return that call.

"He said: I understand you have some property to sell?

"And I said: I do, and he said: What do you have for sale? And I said: 521 Longfellow Street and 726 Webster Street.

"And he said: What do you want for them?

"I said: Well, the market is fluctuating, and I wish you would get the very best prices you can and submit it to me, and I will see if we can make a deal.

"And I don't know who answered the phone. I can't say it was Mr. Urciolo answered the phone.

"Q. Was this phone number that you called, was that a number that Mr. Owen gave you? A. No; he gave the name and this number as well as I remember it.

"Q. How were you able to remember the Urciolo name so well? A. Well, we had tried, that is, you and I had tried an Ercoli case, the case had been tried twice, and the second time we lost the case, and that case is in the Court of Appeals."

Louis O'Connor stated that he had never talked to Urciolo again and that he had never seen him prior to the trial. The above conversation is all there is to establish relation of principal and agent between the plaintiff and defendant.

Giving this evidence full credence it is not sufficient to establish agency. Plaintiff's broker, Fisher, brought the property to Urciolo's attention not for the purpose of using him as an agent but in order to make a direct sale to him. At no time during the subsequent negotiations did plaintiff or her agents either treat Urciolo as a broker or give him any indication that they were dealing with him in that capacity. In fact, there was never any meeting of any kind between the parties. There was no payment of a commission or any offer to pay one. And even after O'Connor realized that Urciolo "had purchased the property"—when he saw that the deeds were to be mailed to him—he unconditionally delivered the deeds to the title company. Urciolo himself at no time during the negotiations purported to act as plaintiff's broker. He made the "down payment" for the property with his own check. He had the deed delivered to him. While the deed was in the name of a so-called "straw", plaintiff's agent, Fisher, testified that he had an idea the named grantee had no beneficial ownership and that it was customary for brokers purchasing on their own account to use fictitious grantees for the purpose of holding title.

▇ Our Code, as well as the common law prohibits a broker purchasing "any property or interest therein for himself, either in his own name or by use of a straw party, without disclosing such fact to the party he represents".[1] The evidence shows that Urciolo's position was constructively disclosed to the plaintiff since it was the plaintiff's agent who himself sought to make a direct sale to Urciolo. Under these circumstances, the single alleged telephone conversation above quoted does not sustain the burden of proof required to show agency. Neither on direct nor cross examination did O'Connor testify that Urciolo had ever accepted the obligations of a broker. And any inference—if there is any—to that effect is rebutted by the plaintiff's subsequent failure to treat Urciolo as a broker. The only theory which can make the parties' subsequent conduct consistent with an agency relationship is that the plaintiff expected Urciolo, whom she had never met, to act as a helpful friend and to sell the property to the so-called straw without remuneration of any kind. This is scarcely plausible but if it were true such a voluntary act of friendship would not make Urciolo a broker within the meaning of our Code.[2]

Plaintiff's entire case is predicated upon the premise that defendant made a profit in violation of a confidential relationship of real estate broker and client. Since there is no substantial evidence to support that relationship, the case was improperly submitted to the jury. The judgment of the court below is reversed and the case remanded to dismiss the complaint and to enter judgment for costs in favor of the defendant.

Reversed and remanded.

[1] D.C.Code (1940), § 45—1408(i).

[2] Ibid, § 45—1402.